SCHEER LAW GROUP, LLP
SPENCER P. SCHEER #107750
JOSHUA L. SCHEER #242722
REILLY D. WILKINSON #250086
155 N. Redwood Drive, Suite 100
San Rafael, CA  94903
Telephone:  (415) 491-8900
Facsimile:  (415) 491-8910
R.650-050S-B

Attorneys for Defendant,
Rubicon Mortgage Fund, LLC

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MAHESWARA LINGAREDDY and SILPA C. PATANATI, individually and as TRUSTEES OF THE LINGAREDDY FAMILY TRUST DATED DECEMBER 9, 2016; LINGAREDDY FAMILY TRUST DATED DECEMBER 9, 2016,<br><br>Plaintiffs,<br><br>RUBICON MORTGAGE FUND, LLC; MORTGAGE LENDER SERVICES, INC. and DOES 1-thorough 10, inclusive<br><br>Defendants. | Bk. No. 4:23-cv-06467<br><br>Chapter 13<br><br>**RESPONSE AND OPPOSTION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER.**<br><br>**DECLARATION OF MAUREEN KELLY.**<br><br>**DECLARATION OF SPENCER P. SCHEER.**<br><br>**REQUEST FOR JUDICIAL NOTICE (FRE 201).**<br><br>**Hearing:**<br><br>**Date:**<br><br>**Time:**<br><br>**Department:** |

Rubicon Mortgage Fund, LLC ("**RMF**") submits this Reponse and Opposition to the Ex Parte Application for Temporary Restraining Order ("**Application** ") prohibiting the foreclosure sale of the real property generally described as  1853 Via Di Salerno, Pleasanton, CA 94566 ("**Property")**. The Application was submitted by Maheswara Lingareddy ("**Lingareddy**"), Silpa

Response and Opposition to TRO Application-   1

1   C. Patanati ("**Patanati**") and the Lingareddy Family Trust Dated December 9, 2016 ("**Trust**").
2   Lingareddy, Patanati and the Trust are jointly referred to as ("**Plaintiffs**").  This Response and
3   Opposition is based on the within memorandum, the pleadings and records on file in this matter
4   and the Request for Judicial Notice ("**RJN**") and the Declarations of Maureen Kelly ("**MK**
5   **Decl**")  and Spencer P. Scheer ("**Scheer Decl**") submitted by RMF herewith .

## I.   INTRODUCTION

The Court should not be fooled by Plaintiffs. There is no basis for this Court to exercise jurisdiction over this case and no federal claim has been raised in the Complaint ("**Complaint**") filed by Plaintiffs. Plaintiffs made a non-consumer loan (**"Loan"**) with RMF and defaulted. As will be shown, all of the disputes and contentions raised in the Complaint were subject to a prior Settlement Agreement ("**Settlement Agreement**") entered into between RMF and Plaintiffs in the Alameda Superior Court ("**State Court**")  just eight months ago. Plaintiffs were represented by counsel and the State Court issued an order ("**Order of Dismissal"**), dismissing the state court action with prejudice **but specifically reserving jurisdiction** over any disputes re the Settlement Agreement.

Plaintiffs received all the benefits that they bargained for in the Settlement Agreement, including reduction of the amounts owed,  a reduced payoff amount and rescission of the existing foreclosure. To obtain these benefits Plaintiffs were required to make a deposit payment of $150,000 to protect RMF and to cover taxes, insurance and interest that would accrue for a six month period, while they tried to sell the Property. Plaintiffs defaulted.  RMF allowed them a second opportunity to cure the default and they defaulted again.  RMF then proceeded with a new foreclosure as allowed under the Settlement Agreement and listed the default just as agreed to in the Settlement Agreement.

Instead of going back to the State Court to raise any alleged claims, as required by the State Court Order of Dismissal, Lingareddy and Patanati both filed bankruptcy to stop RMF's foreclosure sale.  Patanati filed on the eve of RMF's foreclosure sale.  RMF filed a Motion for Relief from the Bankruptcy Stay ("**MRS**") On December 20, 2023, the bankruptcy Judge found

Response and Opposition to TRO Application-   2

that the dispute between RMF and Plaintiff has already been addressed pursuant to the Settlement Agreement and that the Bankruptcy Court would not exercise continued jurisdiction over the dispute and allowed RMF relief from the automatic stay.   Four days before the hearing on the MRS, Plaintiffs filed this case as an "ace in the hole" in case they lost the MFR.

Injunctive relief should not be granted for the following reasons:

1. The State Court reserved jurisdiction to resolve any disputes re the Settlement Agreement.  The Complaint is based solely on alleged breaches of the Settlement Agreement. If Plaintiffs want to dispute their obligations it must be done in the State Court.  Plaintiffs come to this court to avoid such obligations.

2. The Complaint contains no real federal claim. To try and orchestrate a federal claim, Plaintiff's counsel alleges one putative federal claim under the Fair Debt Collections Practices Act ("**FDCPA**") against RMF and the foreclosure trustee, Defendant Mortgage Lender Services, Inc. ("**MLS**").  Ninth Circuit case law is clear: The FDCPA only applies to consumer loans Slenk v. Transworld Systems, Inc. (9th Cir. 2001) 236 F.3d 1072, 1074.  Plaintiffs confirmed in the Settlement Agreement that they in fact represented to RMF that the loan was a business purpose loan.[1]

   A foreclosure trustee is not a debt collector subject to the FDCA (Hundal v. Eagle Vista Equities, LLC (9th Cir. 2018) 726 Fed.Appx. 543, 544.  A Lender collecting on its own debt is not a debt collector (Barnes v. Routh Crabtree Olsen PC (9th Cir. 2020) 963 F.3d 993, 997Estate of Morris v. Bank of New York Mellon (9th Cir. 2021) 856 Fed.Appx. 669, 672;

3. Plaintiff's claims about the imposition of improper charges under the Settlement Agreement are wrong on their face.  Plaintiff's main contention is that RMF wrongfully charged default interest when it started a new foreclosure after Plaintiff's

defaults. It does not appear that Plaintiff's counsel even read the Settlement Agreement because that is exactly what the Settlement Agreement provided for if Plaintiffs continued to default on their obligations, which they did.

4. Plaintiffs come to this Court with "unclean hands" seeking to escape their obligations under the Settlement Agreement and the jurisdiction of the state court to resolve any dispute. Plaintiffs will not likely prevail on their claims in this Court and the balance of harms favors RMF. There is no equity in Property. Plaintiffs owe over Three Million Dollars to the IRS and there is over $7.5 Million Dollars debt on the Property, all while Plaintiffs do not pay taxes, insurance, the IRS or RMF

For all these reasons, the filing of the Complaint was in bad faith. The Complaint is part of concerted efforts by Plaintiffs to avoid the agreed upon State Court examination of any dispute under the Settlement Agreement. Instead, Plaintiffs go form Court to Court to use the Court system in bad faith to delay and avoid their obligations on the Loan and to other creditors, so they can continue to live rent and payment free on the Property.

## II. FACTS

1. RMF made a loan ("**Loan**") to the Lingareddy Family Trust, Dated December 9, 2016 ("**Trust**") to Silpa C. Patanati ("**Patanati**") and her husband Maheswara Lingareddy ("**Lingareddy**") are the Trustees of the Trust. The Trust, Patanati and Lingareddy are jointly referred to as ("**Plaintiff's**"). In accordance with the Loan to the Trust, RMF is the current payee of a Promissory Note dated May 17, 2021 in the principal amount of $3,030,000.00 (the "**Note**") secured by a First Deed of Trust of same date, which bears interest as specified therein. The original Note is held by RMF (See **Kelly Decl ¶2** and **Exhibit "A"**). **Debtor and her husband represented to RMF** that the loan was for business purposes and not for consumer purposes and the Loan was made to a Trust not Patanati or Lingareddy individually {**Kelly Decl ¶2**}. [2]

---

[1] See Settlement Agreement, FN 4, attached to Order of Dismissal attached to Kelly Decl, as Exh C. See also RJN Exh C (Order of Dismissal).

[2] See also Settlement Agreement and Revised Settlement Agreement submitted as Exhibit "B" with this Declaration, in Par. 8 and FN2.

Response and Opposition to TRO Application- 4

3.   The indebtedness evidenced by the Note is secured by a Deed of Trust (the **"Deed of Trust"**) executed and recorded in Alameda County and which encumbers the real property located at 1853 Via Di Salerno, Pleasanton, CA 94566 (the "**Property**").  (**Kelly Decl ¶3 and Exhibit "B").**

4.   RMF is the current holder of the Note and maintains all beneficial interest relating to the subject Loan.  (**Kelly Decl ¶4).**

5.   The Trust Note defaulted on the Note.  The Note became fully due and payable on December 1, 2021 and RMF (at Plaintiffs' request) extended the Loan maturity date to May 1, 2022, and then again to December 1, 2022.  The Loan was not repaid at that time and is now fully due and payable.  On the basis of the default there is now due and owing to RMF or will become due and owing under the Loan and per the Settlement Agreement and Revised Settlement Agreement (which are described more fully below in Par. 6) as of December 12, 2023. (**Kelly Decl ¶3**):

| Item | Amount | Total |
|---|---|---|
| Amount Owed as of 3/15/23, per Settlement Agreement: | $3,105407.48 | |
| **Interest:** | | |
| Reduced by Accrued Interest @6.99% 12/15.22-3/13/23 | ($52,360.93) | |
| Increased by Accrued Int @ 18.% 12/15/22 (From the Extended Loan Maturity Date of 12/15/22-10/26/23 | $472,680.00 | |
| Subtotal Interest: | $420,319.08 | |
| | | |
| **Stipulated Legal Fees** | $3200.00 | |
| | | |
| **Additional Accrued interest** @ 18% from 10/27/23-12/12/23: | $69,690.00 | |
| | | |
| **Third Party Charges** from 10/27/23-12/12/23, including property taxes of $64,105.86, insurance premiums $6.122.04, foreclosure fees $15,106.93, legal $456 and accrued interest on charges $8,292.28 | $12,754.18 | |
| | | |
| **Estimated Additional Third** | $6354.15 | |

| **Party Charges:** ( Additional attorneys' fees and foreclosure and insurance) | | |
|---|---|---|
| Total Due 12/12/2023 | $3,711,807.99 | |

**Interest continues to accrue at $1567.46 per day and charges continue to accrue on the Note as specified therein and in accordance with the Settlement Agreements specified hereafter in Paragraph 8 below.**

6. On March 3, 2023, Patanati and Lingareddy individually and on behalf of the Trust filed an action in the Alameda Superior Court, Case #: 23CVO28599 ("**State Court Action** ") for Wrongful Foreclosure and other putative claims related to the Trust's Loan with RMF and secured by the Property. Patanati, Lingareddy and the Trust were at all times represented by counsel in the State Court Action. RMF disputed the claims raised by Patanati and Lingareddy in the State Court Action. Eventually, RMF, Patanati, Lingareddy and the Trust reached a settlement ("**Settlement**") of all the claims which were raised or could have been raised in the State Court Action related to the Loan, individually and on behalf of the Trust. In accordance with the Settlement, RMF agreed to rescind its pending foreclosure of the Property, reduced the amount owing on the Loan, and waived certain charges on the Loan. In addition RMF allowed the Trust the right to pay off the Loan for a reduced amount conditioned ("**Settlement Conditions**") upon the Trust making a required payment of $105,898.50 (as an interest reserve), and to pay required Property taxes due to the County of Alameda) and insurance premiums, to protect RMF, and to allow the Trust time to sell or refinance the Property. The terms and conditions of the Settlement, were reduced to writing and contained in Settlement Agreement ("**Settlement Agreement**"). (**Kelly Decl ¶6).**

Plaintiffs failed to comply with the Settlement Agreement and did not make the required payment of $105,898.50 due under the Settlement Agreement, and did not pay the required amounts for delinquent taxes to the County of Alameda.[3] However, RMF agreed to allow Plaintiffs additional time to satisfy the Settlement Conditions, in accordance with a revised

---

[3] RMF subsequently paid the property taxes, as specified in Paragraph 7 above.

Settlement Agreement ("**Revised Settlement Agreement**"). In accordance with the Revised Settlement Agreement, if Plaintiffs did not satisfy the Settlement Conditions, RMF would still rescind its existing foreclosure, but the Trust would lose the right to pay off the Loan for the reduced payoff amount and RMF would commence a new foreclosure based on all interest and charges that had accrued on the Loan prior to the Settlement (**excluding pre loan maturity default interest, but including post loan maturity default interest**) and would be allowed to charge default interest going forward, due to the increased risks to Lender and the ongoing defaults on the Loan.

The Settlement Agreement and Revised Settlement Agreement were reduced to writing and submitted to the Judge in the State Court Action in accordance with an Order of Dismissal ("**Dismissal Order**"). The Dismissal Order was entered in the State Court Action on April 18, 2023, confirming the terms of the Settlement Agreement and Revised Settlement Agreement and confirming that no further stay or injunction would be sought by Plaintiffs and that the State Court would reserve jurisdiction to enforce the terms and conditions of the Revised Settlement Agreement   A copy of the Settlement Agreement , Revised Settlement Agreement and the Dismissal Order are attached to (**Kelly Decl ¶6** as **Exhibit "C"**).

7. Plaintiffs defaulted under Settlement Agreement and Revised Settlement Agreement and never did make the required $150,000 payment to RMF or the required payment for taxes or the insurance premiums. Accordingly, RMF initiated a new foreclosure and Pakanati filed Bankruptcy the day before the scheduled foreclosure sale of the Property. The arrearages owing on the Loan and provided for in the Revised Settlement Agreement are correctly specified in Paragraph 5 above. The Loan has matured. RMF has performed each and every act required by the terms of the Deed of Trust and as specified in the Revised Settlement Agreement. (**Kelly Decl ¶7).**

8. RMF requested that the current trustee under the Deed of Trust, Mortgage Lender Services, Inc., and ("**MLS**") initiate foreclosure of the Property after the default under the Revised Settlement Agreement. Accordingly, MLS recorded a Notice of Default on May 11, 2023, as provided in the Revised Settlement Agreement. As part of its duties as a foreclosure

trustee, MLS orders a title report to show all liens on the Property so that proper notification of the foreclosure is provided.  MLS provides such reports to RMF and provided one in this case related to the foreclosure of the Property.  A copy of the title report ("**Title Report"**) and the update/endorsement  ("**Endorsement"**) of the title report obtained by MLS after the initiation of foreclosure and prior to the publication of the Notice of Trustee's Sale,  and  which were provided to RMF is attached to (**Kelly Decl ¶8** as **Exhibit "D"**).  Based on the Title Report, and the Endorsement, the following liens encumbered the Property:

| Lien | Amount |
|---|---|
| Property Taxes 2022-2023 | $64,105.86, (were paid by RMF after the initiation of Foreclosure and are owing on the Loan) |
| Federal Tax Lien: | $2,370,393.87 (recorded August 16, 2021). Now believed to be $3,712,192.44 (Per Debtor's Schedule E/F, Section 4.2 filed in these Proceedings. |
|  |  |
| Total: | $ 3,776.298.30 |
| Grand Total with RMF's Lien: | $7, 465.694.79 |

**It should also be noted that** the Dismissal Order and Revised Settlement Agreement were recorded as specified in the Endorsement. (**Kelly Decl ¶8).**

9.  Previously, on March 3, 2023, Debtor's husband Maheswara Lingareddy filed Chapter 13 bankruptcy, Case #23-40241 WJL 13.  That case was dismissed without a plan being filed on March 20, 202. 3 Pakanati filed bankruptcy on October 26, 2023, the day before the scheduled sale of the Property and RMF obtained relief from stay on December 20, 2023, pursuant the Judge's ruling on its motion filed in the Bankruptcy Court. RMF has submitted its Order for relief from stay and is awaiting the entry of the Order. Instead of complying with the terms of the

Revised Settlement Agreement and submitting any claims or disputes to the Alameda Superior Court as required by the Dismissal Order, Plaintiffs filed this Complaint. (**Kelly Decl ¶)9.  See also RJN Exh. C).**

10. The Note and Deed of Trust provide that Lender shall be entitled to recover from the Trust and that the Property shall secure the payments of all attorney's fees and costs incurred by RMF to collect upon the Loan.  In addition, the Amended Settlement Agreement provides that if Plaintiffs or RMF contest or seek to enforce the Amended Settlement Agreement that the prevailing party will obtain its fees and costs.  By virtue of the Loan default, RMF has necessarily incurred such fees and costs and will continue to incur such fees and costs. (**Kelly Decl ¶10).**

11.  Plaintiffs acknowledge that they entered into the Settlement Agreement and the Dismissal Order, and  that they received the benefits under the Settlement Agreement,  and that they defaulted under the Settlement Agreement by not paying $105,898.50 that was due,  and that because of this RMF had the right to record a new notice of default (**NOD**), as specified in Paragraph F of the Settlement Agreement **(Complaint ¶27 & 28).**   Plaintiffs base the Complaint on alleged imposition of pre-Loan maturity default interest, allegedly imposed in violation of the Settlement Agreement and that other charges are not defined with specificity **(Complaint ¶ 33). In fact no pre-loan default interest was charged** prior to Loan maturity. All default interest charged was for post-loan maturity defaults as specifically allowed under Par F of the Settlement Agreement. All charges specified in the NOD were correct (**Kelly Decl ¶¶ 5 and 7). [4]**

### III. ARGUMENT

**A.  STANDARDS GOVERNING PLAINTIFF'S APPLICATION.**

The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co.*, 240

---

[4]  See also Settlement Agreement, Par. F, attached to Kelly Decl as Exh C, which is   acknowledged by Plaintiff (Complaint 27)**.**

Response and Opposition to TRO Application- 9

F.3d 832, 839 n.7 (9th Cir. 2001). Generally, a plaintiff seeking a preliminary injunction must show that: "(1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). "A preliminary injunction is an extraordinary remedy never awarded as a right." *Winter*, 555 U.S. at 24. Because an injunction is an exercise of a court's equitable authority, it should be invoked "only after taking into account all of the circumstances that bear on the need for prospective relief." *Salazar v. Buono*, 559 U.S. 700, 714 (2010).Egan v. Lonza Houston Inc. (C.D. Cal., Mar. 23, 2023, No. CV 22-5335-DMG (PDX)) 2023 WL 3431910, at *1    Based on these standards, there is no basis to issue a temporary restraining order or injunctive relief.

**Plaintiffs are not likely to succeed on the merits.** Plaintiffs acknowledge that the Settlement Agreement governs the rights claimed.  They acknowledge that they defaulted under the Agreement, and there is not one shred of evidence  provided by Plaintiffs that the new NOD filed by RMF was not accurate based on the Settlement Agreement. RMF has provided evidence that it was in fact accurate and that no pre-loan maturity default interest was charged. All default interst was charged on post-Loan maturity defaults as allowed under the Settlement Agreement and the Order of Dismissal  (Kelly Decl¶ 5 ).

**Plaintiffs are not likely to suffer any irreparable injury.** Plaintiffs are not paying RMF, the IRS, and are not paying taxes and insurance.  They made numerous promises in the State Court Litigation and breached them all, while living payment free.  The Loan to RMF is due and payable and RMF is required to continue to pay taxes and insurance.

There is no equity in the Property beyond the amount of the liens. Plaintiffs provide no evidence of value and do not make any representation of value of the Property and even if they were to have presented the inflated value of the Property listed by Patanati in her schedules filed in the bankruptcy court (Approximately $5.5 Million Dollars), there is approximately $7.5 Million Dollars encumbering the Property.

**Balancing the Equities should weigh strongly against Plaintiffs**. Plaintiffs entered into the Settlement Agreement and received all the benefits and defaulted. As part of the Settlement Agreement Plaintiffs bargained for no further stay or delay. To enforce this, obligation Plaintiffs agreed to return to State Court, where the judge would have the benefit of the history between the parties to resolve any dispute (See **Complaint¶ 27**) and the Settlement Agreement. . RMF specifically bargained for this to avoid exactly what has happened: Multiple bankruptcies and further frivolous law suits. Plaintiffs' Complaint is contrived and seeks to obtain jurisdiction under false premises i.e. that the FDCPA applies to this Loan, when it clearly does not. Plaintiffs have already filed two bankruptcies to delay RMF. The equities should weigh heavily against Plaintiffs.

**B.   THERE IS NO BASIS FOR THIS COURT TO EXERCISE JURISDICTION OVER THIS CASE.**

As discussed, Plaintiffs have agreed to and submitted themselves to the jurisdiction of the Alameda Superior Court to resolve any claims related to the Settlement Agreement. Plaintiffs have breached that Agreement by filing this action and they defacto admit it in the Complaint by referring the Settlement Agreement and its terms. Plaintiffs "skip from court to court", hoping they can get a new judge to ignore the prior history and focus on new putative claims.

In addition, there is no basis whatsoever, to assert that there is a federal claim in this case. As shown, the only federal claim raised is for alleged violations of the FDCPA. These claims are not applicable to non-consumer loan and are also not applicable to a lender collecting on its own debt, or a foreclosure trustee acting to carry out statute mandates. Slenk v. Transworld Systems, Inc. (9th Cir. 2001) 236 F.3d 1072, 1074. Debtors confirmed in the Settlement Agreement that they in fact represented to RMF that the loan was a business purpose loan.[5]

---

[5]  See Settlement Agreement, FN 4, attached to Order of Dismissal attached to Kelly Decl, as Exh C. See also RJN Exh C (Order of Dismissal).

Response and Opposition to TRO Application-  11

A foreclosure trustee is not a debt collector subject to the FDCA (Hundal v. Eagle Vista Equities, LLC (9th Cir. 2018) 726 Fed.Appx. 543, 544.  A Lender collecting on its own debt is not a debt collector (Barnes v. Routh Crabtree Olsen PC (9th Cir. 2020) 963 F.3d 993, 997Estate of Morris v. Bank of New York Mellon (9th Cir. 2021) 856 Fed.Appx. 669, 672.   Accordingly, this claim is frivolous.

### C.  THE COMPLAINT IS WITHOUT MERIT  AND GIVES THIS COURT BASIS TO DENY ANY RELIEF

Where a plaintiff fails to demonstrate any serious questions going to the merits of his or her claim, the court need not consider the remaining factors released to injunctive relief .Blankenship v. Newsom (N.D. Cal. 2020) 477 F.Supp.3d 1098, 1103–1104.

Plaintiffs do not raise any serious question going to the merits of their claims. The only discernable   claim is  that there was improper default interest charged and that other charges may be improper.  No evidence at all is presented by Declaration or even alleged in the Complaint that supports any claim that the amounts currently owning on the Loan are improper.  Only conclusions with no support.  To the contrary, the Settlement Agreement and Revised Settlement Agreement explicitly specify what is owing, what was reduced under the Settlement and what would be imposed if there was a default by Plaintiffs.

RMF has submitted a Declaration under penalty of perjury showing that it in fact abided by the Settlement Agreement and removed default interest prior to the Loan Maturity Date, as required by the Settlement Agreement and has explained all charges on the Loan.

Not only is there no factual support for the claims raised by Plaintiffs.  As stated Plaintiffs cannot maintain an FDCPA action under the authority cited.  Plaintiffs' Breach of Contract Claim should fail under the authority cited by Plaintiffs (**See Plaintiff's Memorandum, page 7. Section 2**).  It is Plaintiffs that admit their breach of the Settlement (**Complaint ¶¶ 27-28**), and they plead no excuse.  They fail to do anything more than generally allege a default with no supporting facts at all.  Plaintiffs' claims that the imposition of default interest is improper is boilerplate with no application to the facts of this case. Unlike the cases cited by Plaintiffs

challenging default interest as a penalty when not bargained for and related to the risk, Plaintiffs and RMF through counsel in fact bargained for all the rights in the Settlement Agreement and clearly agreed and provided that if Plaintiffs defaulted, they could impos post-loan maturity default interest due to the continuing defaults and increased risk. This is clearly allowed under Garrett v. Coast & Southern Fed. Sav. & Loan Assn, 9 Cal .3d 731 (1973) and its progeny and was approved by the State Court.  The default interest charged was not part of a liquidated damage provision, but a bargained for term under the Settlement Agreement. Even under Garrett such efforts to measure the risk and impose default interest is recognized and upheld. See Garrett v. Coast & Southern Fed. Sav. & Loan Assn *supra* at 739.

All the other claims raised in the Complaint are based on the alleged wrongful imposition of default interest and should fail for the same reason.

Accordingly, there are no serious issues raised by Plaintiffs in the Complaint that would merit injunctive relief of any kind. This is a transparent attempt by Plaintiffs to avoid their obligations and to forum shop and delay.

### D.   BOND (CCP §529)

Plaintiffs have incurred a large default on their Loan and have failed to pay taxes and insurance.  As admitted by Plaintiffs in the Complaint and  shown by the Declaration of Maureen Kelly,  Plaintiffs failed to make a payment of $105,898.50 due under the Settlement Agreement in April of this year and defaulted by missing well over $150,000 payments in interest, property taxes and insurance advances after the Settlement Agreement.  Accordingly, if any relief is granted to Plaintiffs for any reason, they should be required to post a bond in an amount of at least $400,000 to cover defaults after the Settlement Agreement and to cover ongoing interest and attorneys' fees and costs that have or will accrue due to Plaintiff's breach of the Settlement Agreement, and which are provided for in the Settlement Agreement (**See Complaint ¶27**).

### E.   PLAINTIFFS AND THEIR COUNSEL SHOULD BE ORDERED TO PAY RMF'S ATTORNEY'S FEES AND COSTS PURSUANT TO THE SETTLEMENT AGREEMENT AND RULE 11.

Response and Opposition to TRO Application-   13

As shown, the Settlement Agreement provides that if there is a breach, the responsible party shall pay required fees and costs.  Plaintiffs and their counsel both knew and understood that the Settlement Agreement provided for the State Court to retain jurisdiction over any dispute **(See Complaint ¶27**)), but filed the Complaint anyways after Plaintiffs admittedly breached their obligations.   Either Plaintiff's counsel did not read the Settlement Agreement or did not care. In any event, there was no basis to file it except to circumvent the authority of the State Court, to avoid their obligations under the Settlement Agreement, and to further stall and delay.  Each is improper.  Clearly, Plaintiffs and their counsel planned this sequence of court filings to continue the delay by waiting until just before the Bankruptcy Court ruled on RMF's Motion for Relief form the Stay.

This is probably not the last of Plaintiffs' legal maneuvers.  RMF requests that this Court award RMF the sum of $4248.00 in attorney's fees as specified in the attached Declaration of Spencer P. Scheer.  Conversely, and if this Court deems it proper and  because RMF did not have sufficient time to submit a Rule 11 demand on Plaintiffs' counsel, that a further hearing be set on an Rule 11 Motion awarding RMF fees and costs incurred against counsel for Plaintiffs.

WHERFORE, RMF requests that:

1. The Application for a Temporary Restraining Order be denied.
2. That no further hearing on a request for a Preliminary Injunction be issued.
3. That RMF be awarded its fees and costs for defending this matter
4. That if for any reason relief is granted to Plaintiffs that it be conditioned upon posting a bond of at least $400,000 to protect RMF based on the defaults to date and ongoing litigation costs. .
5. That this Court set a further hearing pursuant to Rule 9011 to determine if Plaintiff's counsel should pay RMF's fees and costs.

SCHEER LAW GROUP, LLP

DATED: December 21, 2023            /s/SPENCER P. SCHEER
                                                         #250086

Response and Opposition to TRO Application-   14